### YOUNG v. GORDON et al.

### In re FOSTER MOTOR CAR CO.

(Circuit Court of Appeals, Fourth Circuit. December 15, 1914.)

#### No. 1304.

BANKRUPTCY ⊂═⊃323—PROOF OF CLAIMS—"SECURED CREDITOR."

Where a creditor of a bankrupt held the bankrupt's note, indorsed by Y., for a part of the indebtedness, it was entitled to a dividend on the full amount of the claim, though after the proofs of claims were filed Y. paid the note, and Y. was not entitled to a dividend on the amount paid; such creditor not being a "secured creditor," within Bankr. Act July 1, 1898, c. 541, § 57h, 30 Stat. 560 (Comp. St. 1913, § 9641), providing for the payment of a dividend only on the unpaid balance of claims of secured creditors, after crediting thereon the value of the securities, in view of section 1, cl. 23, defining a "secured creditor" as a creditor having security for his debt upon the property of a bankrupt of a nature to be assignable under that act, or who owns such a debt for which some indorser, surety, or other person secondarily liable has security upon the bankrupt's assets.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 503, 505, 513; Dec. Dig. ⊂═⊃323.

For other definitions, see Words and Phrases, First and Second Series, Secured Creditor.]

Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Eastern District of Virginia, at Richmond, in Bankruptcy; Edmund Waddill, Jr., Judge.

In the matter of the Foster Motor Car Company, bankrupt; James W. Gordon and John B. Lightfoot, receivers. An order of the referee

for the payment of a dividend was affirmed by the District Court, and C. L. Young files a petition to superintend and revise the proceedings. Affirmed.

S. S. P. Patteson, of Richmond, Va., for petitioner.

John B. Lightfoot, Jr., of Richmond, Va., for respondents.

Before PRITCHARD and WOODS, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge. From May, 1911, until December, 1913, the Commonwealth Bank was lending money to the Foster Motor Car Company, to be herein called the Foster Company. On December 8, 1911, the Foster Company executed a note to the bank for $5,000, which was secured by the indorsement of C. L. Young—an officer of the Foster Company—and L. M. Foster and Nixon Ball. This note was delivered to the bank with the following letter:

"Richmond, Va., Dec. 7, 1911.

"Commonwealth Bank, Richmond, Va.—Gentlemen: We herewith hand you our note dated Dec. ——, 1911, payable on demand at the Commonwealth Bank for the sum of five thousand ($5,000.00) dollars, indorsed by us, and also indorsed by C. L. Young, L. M. Foster, and Nixon Ball. This note is to be held by your bank as collateral security for any and all amounts which you may loan or advance to the Foster Motor Car Company until notified in writing by the said indorsers to the contrary.

"Yours truly, [Signed] Foster Motor Car Co., Inc.,
"Per Nixon Ball."

On August 29, 1913, the estate of the bank was put in charge of receivers, the respondents here, by order of the chancery court of the city of Richmond. On January 17, 1914, the Foster Company was adjudicated a bankrupt. The receivers of the bank filed proof of unsecured debt on February 7, 1914, for $11,689.57. This claim does not include the $5,000 note of December 8, 1911, on which Young was indorser. The receivers claimed only as unsecured creditors. Young also on the same day filed his claim as an unsecured creditor of the Foster Company for $18,371.97, and at the foot thereof was the following additional claim:

"C. L. Young is indorser on $5,000 note for Foster Motor Car Company held by receivers of the Commonwealth Bank, which he will have to pay, and when paid the Foster Motor Car Company will owe him, in addition to the above, the further sum of $5,000, with interest thereon which may have accrued as of that date. C. L. Young, Creditor."

On April 25, 1914, Young paid the note of December 8, 1911, with interest, amounting to $5,249.81, to the receivers of the bank. On May 6, 1914, the referee in bankruptcy ordered the payment of a dividend of a little over six cents on the dollar on the claims of the creditors of the Foster Company. Under this order Young was to receive a dividend on $18,371.97, and the receivers on $11,689.57. On May 14, 1914, Young filed a petition for a review of the order of the referee. The District Court affirmed the order, and the case is here on petition to revise.

The contention made on behalf of Young is that he should have the dividend on the $5,249.81 paid by him in satisfaction of the collateral

note, and that the dividend payable to the receivers should be correspondingly reduced. As laid down by the majority opinion in Merrill v. National Bank, 173 U. S. 131, 136, 19 Sup. Ct. 360, 362 (43 L. Ed. 640) the equitable rule for the distribution of an insolvent estate is as follows:

"The creditor can prove for, and receive dividends upon, the full amount of his claim, regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided that he shall not receive more than the full amount due him."

See, also, Aldrich v. Chemical Bank, 176 U. S. 618, 638, 20 Sup. Ct. 498, 44 L. Ed. 611; Sexton v. Dreyfus, 219 U. S. 339, 345, 31 Sup. Ct. 256, 55 L. Ed. 244; Hitner v. Diamond State Co. (C. C.) 176 Fed. 389, 390; Commercial Bank v. Jenks Co. (D. C.) 194 Fed. 739, 741, 742.

It is argued, however in behalf of the petitioner, that receivers are secured creditors and that section 57h of the Bankrupt Act is applicable. But the words "secured creditors" in this section must be read in view of the definition of this phrase in clause 23 of section 1 of the act:

" 'Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this act, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets."

When the receivers proved their claim, they held the $5,000 note of the Foster Company, secured by the indorsement of Young. There is no contention that Young had security upon the property of the bankrupt. Unless, therefore, the note made by the Foster Company and indorsed by Young was a part of the estate of the Foster Company at the date of filing the petition in bankruptcy, there would seem to be no ground for the contention made for the petitioner. The moment this note was delivered to the bank, it became a liability of the Foster Company, as well as of Young. The obligation on the part of Young was to the bank, and not to the Foster Company. In no sense therefore could this collateral security to the bank be considered as an asset of the Foster Company. It follows that the receivers were not "secured creditors" within the meaning of section 57h and that this section has no application here. See In re Headley (D. C.) 97 Fed. 765, 771; In re Sweetzer (D. C.) 128 Fed. 165; Gorman v. Wright, 136 Fed. 164, 69 C. C. A. 76; Board v. Hurley, 169 Fed. 92, 97, 94 C. C. A. 362; In re Matthews (D. C.) 188 Fed. 445, 26 Am. Bankr. Rep. 19; In re Thompson (D. C.) 31 Am. Bankr. Rep. 236, 208 Fed. 207; In re Manhattan Brush Co. (D. C.) 209 Fed. 997; Collier, Bankruptcy (10th Ed.) pp. 12, 13, 724.

Nor do we find any reason elsewhere in the Bankrupt Act or in the decisions of the courts for sustaining the contention of the petitioner. The discussions of the "bankruptcy rule" in the opinions in Merrill v. Bank, supra, are based on the express or implied assumption that the creditor has collateral security on the property of the bankrupt. In the Pulsifer Case (D. C., 1880) 14 Fed. 247, 249, it is said:

"There is no doubt that it has been repeatedly held, under our bankruptcy law, that even if the holder of a note has received a sum of money from an indorser, he may nevertheless prove it in full against the estate of the maker in bankruptcy, and collect as much as he can, and any surplus he may receive over the amount actually due the holder will be held in trust for the indorser or surety."

And this statement is in full accord with the decisions, cited above, arising under the present Bankrupt Act. The ruling of the trial court must be affirmed, at the cost of the petitioner.

Affirmed.